FOLEY et al. v. GUARANTEE TRUST & SAFE-DEPOSIT CO. et al.

(Circuit Court of Appeals, Eighth Circuit.   June 8, 1896.)

No. 806.

1. EQUITY PRACTICE—PRELIMINARY INJUNCTION.

It is not enough to justify the circuit court of appeals in reversing an order of the circuit court refusing a preliminary injunction to stay a foreclosure sale, in a suit to vacate the decree of foreclosure, that the complaint probably contains sufficient averments to warrant the relief prayed for; but it must be made to appear that there are reasonable grounds for believing that the material allegations of the bill, tending to show fraud and collusion, are true, and that they will probably be established on the final hearing.

2. SAME.

Complainants filed a bill to vacate a decree in a railroad foreclosure suit, alleging fraud and collusion in procuring the decree, and applied for a preliminary injunction to restrain the sale. It appeared that certain parties had intervened in the foreclosure suit, and after full opportunity to present the same objections to the entry of the decree, in the presentation of which complainants had co-operated with them, they had withdrawn their objections. Complainants averred that this was done without their knowledge, but made no attempt to show any improper motive. It also appeared that complainants had made no effort to attack the decree for three months after its entry, and that on the eve of the sale they had made a demand on one of the defendants in their bill to buy their interests in order to avoid the suit. *Held*, that these circumstances were sufficient to justify the denial of the preliminary injunction.

Appeal from the Circuit Court of the United States for the District of Minnesota.

This was an original bill which was filed by the above-named appellants against the above-named appellees to vacate and annul a decree of foreclosure that had been rendered by the circuit court of the United States for the district of Minnesota, and to enjoin a sale of the mortgaged property that had been advertised under and in pursuance of said decree of foreclosure. As a ground for such relief, the bill contained, in substance, the following allegations: That the Duluth & Winnipeg Railroad Company (hereafter termed the "Railroad Company") was organized in the year 1878 to build a line of railroad from the city of Duluth, in a northwesterly direction, to the Northern boundary of the state of Minnesota; that in the year 1890 the North Star Construction Company (hereafter termed the "Construction Company") was organized for the purpose of building and equipping said Duluth & Winnipeg Railroad, for which it was to receive certain bonds and stocks of said railroad company, and to have possession of said railroad until it was completed· that between January 1, 1890, and January 1, 1893, said construction company built about 100 miles of said railroad, and that in the meantime the said railroad company executed and delivered to the Guarantee Trust & Safe-Deposit Company, one of the defendants, a certain mortgage upon its line of railroad to secure the payment of certain bonds that had been issued for the purpose of constructing and equipping said railroad; that in October, 1894, a suit was commenced in the circuit court of the United States for the district of Minnesota by said Guarantee Trust & Safe-Deposit Company against said railroad company, and against said construction company, for the purpose of foreclosing said last-mentioned mortgage or deed of trust; that in said suit a receiver of said railroad was duly appointed; and that thereafter, on January 28, 1895, a decree of foreclosure was duly entered by consent of the parties thereto. The bill averred, in substance, that subsequently, on January 31, 1895, certain stockholders of said Duluth & Winnipeg Railroad Company intervened in said foreclosure suit for the protection of their interests, and were permitted to file an answer to the bill of foreclosure,

as well as a cross bill, wherein they charged, in effect, that said foreclosure suit had been conducted fraudulently and collusively; that the complainants, Timothy Foley, Michael H. Foley, and Archie Guthrie, were duly advised of the commencement of said intervention proceedings, and contributed to the expense thereof, so long as the same were pending; that during the pendency of such proceedings, and while testimony in support of the aforesaid answer and cross bill was being taken, an agreement was arrived at by all parties to said foreclosure suit, including the interveners, whereby it was stipulated that the relief prayed for in the bill of complaint might be granted; and that in pursuance of such agreement a decree of foreclosure was in fact signed and duly entered of record on January 16, 1896, directing a sale of the Duluth & Winnipeg Railroad for the satisfaction and payment of the mortgage debt. In addition to the foregoing allegations showing the history of said foreclosure suit, the bill of complaint further charged, in substance, as a ground for the relief sought, that the said foreclosure suit, and the proceedings taken thereunder, were "baseless, collusive, and fraudulent"; that the Guarantee Trust & Safe-Deposit Company, in whose favor said mortgage had been executed by the Duluth & Winnipeg Railroad Company, had acted in collusion with the defendant William C. Van Horne, and that said trust company was dominated and controlled by him; that said railroad company, at the time the foreclosure suit was begun, had not defaulted in the payment of the interest on its bonds, was not insolvent, and had no floating debt; that in reality said railroad company was a mere "legal fiction," which had been organized by the persons composing the construction company for the purpose of enabling the latter to construct a line of railroad from Duluth to Winnipeg, but that in point of fact the railroad company was at all times dominated and managed by the construction company, by means of officers and directors who were designated and elected by the construction company; that by the terms of an agreement entered into between the railroad company and the construction company for the building and equipment of said road, the construction company had obligated itself to pay all the interest on the bonds of the railroad company until the railroad was fully constructed; that when the foreclosure suit was commenced the construction company owned 869 of the bonds that had been issued by the railroad company; that the residue of such bonds belonged to the stockholders of the construction company; and that the latter persons had acquired said bonds with full knowledge that the construction company was obligated to pay the interest thereon until the road was completed.

It was further alleged in the bill of complaint that the defendant William C. Van Horne was the president of the Canadian Pacific Railroad Company, which latter road owned and controlled the Duluth, South Shore & Atlantic Railroad; that said Van Horne, acting in the interest of the corporations with which he was thus connected, had "conceived the unlawful and fraudulent design of acquiring said Duluth & Winnipeg Railroad at a cost far below its real value"; that, with such purpose in view, he had purchased a controlling interest in the stock of the construction company in January, 1893, and at that time had assured the vendors of the stock that he was able to, and that he would, complete said Duluth & Winnipeg Railroad, when in point of fact he intended to so operate said railroad as to occasion a default in the payment of its interest charges. The bill next described certain alleged acts of the said Van Horne that had been done and performed, as it was averred, with a view of depreciating the value of said railroad, and obtaining the same at a small cost. Among other acts of most importance, the complaint averred, in substance, that said Van Horne had made no effort, after obtaining control of the Duluth & Winnipeg Railroad, to complete, extend, or equip the same; that he had made no attempt to increase its earnings; that he had diverted traffic therefrom to the lines of the Canadian Pacific Railroad; that he had misapplied the greater portion of the net earnings of the Duluth & Winnipeg Railroad Company for the year 1893, by aiding a certain terminal company in the construction of terminal facilities at the city of Superior, Wis., taking bonds of the terminal company as security for the advances so made to it; and that he had removed certain officers of said Duluth & Winnipeg Railroad Company, under whose manage-

ment the road had earned in 1893 the sum of about $88,000, and had appointed other officers, under whose management the earnings had declined in the year 1894 to the sum of about $15,000. It was further charged, in effect, that, when said William C. Van Horne acquired control of the construction company, he had agreed with the owners of its stock to take up and provide for the floating indebtedness of the construction company, which then amounted to about $600,000, but that, instead of taking up said indebtedness and carrying it in his own name, he had induced said construction company to execute a note in favor of a third person for the amount of the floating indebtedness, which was actually paid, and to pledge certain securities belonging to said construction company for the repayment of said note; that said Van Horne had subsequently caused the securities so held in pledge by said third party to be sold; that he had himself become the purchaser thereof at such sale for the sum of $340,000, and in this manner had managed to acquire an ostensible title to valuable securities belonging to the construction company for one-fifth of their real value. The complainants below further alleged that they were the bona fide holders of bonds of the Duluth & Winnipeg Railroad Company of the par value of $30,000, the same being a part of the bonds that were secured by the mortgage or deed of trust that had been foreclosed by the decree entered on January 16, 1896. In view of the premises, the complainants prayed that said decree be set aside and vacated; that it be adjudged that the defendants were estopped from claiming that the Duluth & Winnipeg Railroad Company had defaulted in the payment of its interest; that a receiver of said road be appointed, with power to take possession of the same and to operate it; and that a sale of said road under the existing decree of foreclosure be enjoined and postponed.

The defendants below filed an answer in which they denied all of the allegations of the complaint tending to show fraud and collusion in the prosecution of the foreclosure suit. They also denied all other allegations of the bill which in any wise tended to show that the complainants were entitled to the relief prayed for. Numerous affidavits in support of the averments of the answer were also filed. The case afterwards came before the circuit court on a motion made by the complainants to enjoin the sale under the decree of foreclosure which had then been advertised to take place, whereupon, after a hearing had, said motion was overruled. From the order denying said motion the complainants have appealed.

. Moses E. Clapp and Mr. McCartney, for appellants.

M. D. Munn (A. E. Boyesen and N. M. Thygeson with him on brief), for appellees.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is insisted by the appellees that the bill of complaint fails to state a case which would warrant a court of equity in vacating the decree of foreclosure, because the allegations of the bill are, as a rule, vague and indefinite, and because those allegations which attempt to charge fraud and collusion are mere statements of legal conclusions. There is some force, doubtless, in the view thus urged, —that the bill, taken as a whole, does not show that the complainants are entitled to any form of equitable relief; but we do not find it necessary, on the present occasion, to express a definite opinion with respect to that contention. The case is before this court on appeal from an order refusing to grant a preliminary injunction to stay the sale of the mortgaged property under the decree of foreclosure. The application for such order was heard in the

circuit court upon the pleadings, and upon certain affidavits and exhibits which were filed by the respective parties, both to support and to disprove the material averments contained in the bill and answer. It is not enough, therefore, to justify this court in reversing the order of the circuit court, that the complaint probably contains sufficient averments to warrant the relief prayed for; but it must be made to appear, before this court will undertake to interfere with the action of the circuit court, that there are reasonable grounds for believing that the material allegations of the bill tending to show fraud and collusion are true, and that they will probably be established on the final hearing of the case. In this latter respect the case fails. We think that the complainants below wholly failed to show that the material allegations of the bill were probably well founded in point of fact, and that they were for that reason entitled to injunctive relief. After a careful examination of the affidavits and exhibits, we have become satisfied that the Duluth & Winnipeg Railroad Company had defaulted in the payment of the interest on its bonds when the foreclosure suit was instituted, and that the railroad company was at the time utterly insolvent, and without means to meet its just obligations. We find no evidence whatever that the North Star Construction Company ever obligated itself, as charged in the bill of complaint, to pay the interest on the bonds that were issued by the railroad company, until the railroad was fully completed; and there is no sufficient evidence to support the further charge contained in the bill,—that the said bonds, or a majority thereof, were held by the construction company and its stockholders when the foreclosure suit was instituted, and that they had severally acquired said bonds with the knowledge that the duty of paying the interest thereon had been assumed by the construction company. These primary allegations found in the bill of complaint seem to be wholly unsupported by the proof. We may furthermore add that we find no evidence in the present record which would justify us in placing any reliance upon the further allegations of the bill, that the Guarantee Trust & Safe-Deposit Company had acted in collusion with the defendant William C. Van Horne, and under his domination and control, either in bringing the foreclosure suit originally, or in prosecuting it to a final decree. That suit appears to have been brought by the Guarantee Trust & Safe-Deposit Company, as trustee in the mortgage, in the usual way, at the instance and request of a majority of the mortgage bondholders, and to have been prosecuted throughout in the usual manner for their sole benefit and advantage. Moreover, the evidence contained in the present record does not sustain the further charge contained in the bill of complaint,—that the defendant William C. Van Horne acquired control of the Duluth & Winnipeg Railroad with the preconceived intent of depreciating its value, and buying it at a small cost. The circumstances under which he was induced to purchase a controlling interest in the stock of the construction company, and in that way to obtain control of the Duluth & Winnipeg Railroad, are fully explained in the affidavits and exhibits which have been filed by the defendants; and we are unable to say, upon the show-

ing thus made, that it is even probably true that he was actuated by a fraudulent motive in purchasing said railroad, or that his management of the same after he had acquired it was in any respect fraudulent or unlawful.    It is apparent, we think, that the allegations of the bill to which we have thus briefly alluded are those upon which the complainants place their chief reliance to obtain a decree vacating the decree of foreclosure, and other subsidiary relief.    The proof offered in support of these allegations was, in our opinion, wholly inadequate to show that the facts alleged could probably be established on a final hearing of the case, and for that reason we have no doubt that the motion for an injunction was properly denied.

There are other facts disclosed by the record which would naturally and very properly disincline any court to grant an injunction staying the execution of the decree of foreclosure.    The foreclosure suit, it seems, was commenced on October 11, 1894, and was pending from that time until January 16, 1896, when a final decree was entered.    In the meanwhile, on January 31, 1895, certain stockholders of the Duluth & Winnipeg Railroad Company were permitted to intervene for the protection of their interests.    They filed an answer to the bill of foreclosure, and also a cross bill, which latter pleading contained substantially all the allegations tending to show fraud and collusion between the parties to the foreclosure suit that are found in the present bill of complaint.    These appellants made common cause with the interveners, by contributing to the expense of employing counsel and taking testimony, and thereby they became parties to that litigation.    After such intervention proceedings had been pending for nearly a year, and after a full opportunity had been given to investigate all of the charges of fraud and collusion that had been made by the interveners, the latter withdrew their opposition to the suit, and consented to a decree of foreclosure. The appellants aver that the action of the interveners in consenting to a decree of foreclosure was at the time unknown to them, and that the decree was entered without their knowledge or consent, but they fail either to aver or prove that the interveners were induced to withdraw their opposition to the foreclosure suit by any improper means or influences.    Neither do the appellants aver or prove that they made any effort to have the alleged fraudulent decree set aside or vacated for nearly three months after the same had been signed and entered of record.    It is also a fact of much importance and significance that the present bill was filed on April 4, 1896, only a short time before the mortgaged property was to have been sold under the decree of foreclosure, and that the filing of the bill was preceded by a demand, which appears to have been made upon the defendant Van Horne by the complainants' solicitors, that, in order to prevent the commencement of a suit "that might prove difficult to stop," he should purchase the complainants' bonds at par.    In view of the facts and circumstances to which we have last adverted, we think it manifest that the complainants below did not show such diligence, or such evidence that the suit was commenced in good faith, as entitled them to the favorable consideration of a

court of equity. If for no other reason than the one last suggested, we think that the circuit court was well warranted in refusing the relief prayed for. The order of the circuit court overruling the motion for an injunction is accordingly affirmed, and inasmuch as the pendency of the appeal has served to delay, and is still delaying, the execution of the decree of foreclosure, a mandate affirming the order of the circuit court will be forthwith issued.